MOUNTAIRE POULTRY, INC. et al *v.*
Phyllis PULLIAM

CA 80-237                                      601 S.W. 2d 223
Court of Appeals of Arkansas
Opinion delivered September 10, 1980

*Chester C. Lowe, Jr.*, for appellants.

*William H. Hodge*, for appellee.

JAMES H. PILKINTON, Judge. This is a claim filed by appellee for compensation under the workers' compensation law. It is the claimant's position that on January 13, 1975, she sustained an accidental injury to her left knee when she stepped in an open drain at her place of employment. She further contends that it was not until September 1, 1977, that the injury became so aggravated that it required surgical intervention. Claimant additionally argues that her right leg, due to the additional stress placed upon it by a weakened left leg, also required surgery in October, 1978. The employer and its insurance carrier resisted the claim on the ground that it is barred by the statute of limitations [Ark. Stat. Ann. § 81-1318 (Repl. 1976)]. The Commission rejected the plea of limitations, finding that although the claimant suffered a work-related injury on January 13, 1975, the nature of the injury did not become apparent and compensable until September 2, 1977; and that the claim, filed on September

19, 1978, was therefore timely. We find substantial evidence to support that conclusion and therefore affirm the award.

The claimant, Mrs. Phyllis Pulliam, testifed that in January of 1975 she stepped in a drain hole from which the grate had been removed. She felt an immediate pain in her left knee and promptly went to see the company nurse, Mary Grantham, who told her she had a sprained knee and gave her some muscle relaxers. Mrs. Pulliam did not go to see a doctor right away. Later in the year she went to Dr. Barry Green, but not for her knee injury. She did see the company nurse regularly between January, 1975, and September, 1977, when she first saw Dr. Green about her knee injury. Mrs. Pulliam didn't miss any work from January of 1975 until September of 1977. She had surgery performed on her left knee on October 4, 1977, missed work from that time until January 3, 1978, and then worked until May 4, 1978. She testified that she had to cease work on May 4,1978, because her left leg just wouldn't hold her up any longer. Claimant had surgery on her right knee in October, 1978. The employer continued to pay her regular salary through August 8, 1978.

Other evidence submitted includes the testimony of the company nurse, the reports of Dr. Barry Green, a copy of an employee health record compiled on the claimant, the record of a knee brace being obtained for claimant, a copy of the employer's first report of industrial injury, and a copy of the claim filed with the Commission.

The essence of the claimant's testimony was that she believed she had suffered a sprained left knee, but that her knee grew progressively worse until she was forced to seek the medical attention that resulted in the surgery in October of 1977. The evidence given by Mrs. Mary Grantham, the company nurse, supports the claimant's theory of recovery. On her medical log Mrs. Grantham made a notation of the claimant injuring her knee on January 13, 1975. From that time until September of 1977, the claimant continued to work, and was provided 7-1/2 grain aspirin for the entire period on a fairly regular basis. Although the claimant sought no medical services in connection with her knee until

September of 1977, Mrs. Grantham's testimony indicates that Mrs. Pulliam frequently complained about her knee, and she obtained a knee brace or band in April of 1975 which the claimant tried to wear. We have concluded that the testimony of the claimant, when combined with that of Mrs. Grantham and the medical evidence submitted, constitutes substantial evidence to support the decision of the Commission. The claimant had a long period of difficulty with the knee resulting in surgery. Dr. Green said that due to the "overload aggravation secondary to her left knee," Mrs. Pulliam suffered further disability to the right knee requiring surgery to that joint in 1978. The Commission determined that the second injury was clearly a compensable consequence of the left knee injury, and that the claimant is still in her healing period inasmuch as she has not yet been released by Dr. Green.

The Workers' Compensation Commission found that since the knee injury did not become apparent until September, 1977, claimant comes with those circumstances set forth in *Donaldson* v. *Calvert-McBride Printing Company*, 217 Ark. 625, 232 S.W. 2d 651 (1950). The general rule is that the time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of his or her injury or disease. See 3 Larson, *Workmen's Compensation Law*, § 78-41 (1976). Whether that rule of law is applicable to a particular case depends upon the facts, and each case must be decided on its particular fact situations. For a discussion of latent injuries under the "injury" type statutes, such as Arkansas has, as opposed to "accident" type statutes, see 3 Larson, *supra*, § 78.42 (1976). The Arkansas statute provides that a claim for compensation for disability on account of an injury (other than an occupational disease and occupational infection) shall be barred unless filed with the Commission within two years from the date of injury. The term "disability" is defined in Ark. Stat. Ann. § 81-1302(e) as "incapacity because of injury to earn, in the same or other employment, the wages which the employee was receiving at the time of the injury." In the case before us, appellee did not suffer any incapacity to earn until she missed work for the first time in September, 1977.

Appellants seriously contend that the decision of the Commission awarding benefits is erroneous because in April, 1975, soon after the injury, appellee was provided with a knee brace, at the expense of the appellants, as prescribed by Dr. R. C. Dickinson of DeQueen. The record shows that the knee brace in question was furnished at the request of the company nurse, and was only an elastic bandage costing $2.47. It is true that compensation furnished by the carrier to the claimant, in the form of medical treatments, more than a year before the claim is filed, will bar a claim for additional compensation under the act. However, in the case before us the Commission found against appellants on this contention. There is substantial evidence in the record to support the Commission's conclusion that the statute of limitations does not apply to this case under the facts. At the time the nurse called Dr. Dickinson, and the elastic knee band was furnished, everyone thought claimant had suffered only a minor injury consisting of a sprained knee. The treatment rendered, including the knee band, was more in the nature of first aid and the Commission refused to recognize such first aid as constituting "compensation" within the meaning of that term. Routine and minor first aid or medical treatment in the employer's clinic, of the kind that is provided for compensable and non-compensable injuries alike, as a rule does not stand as the equivalent of payment of compensation for the purpose of invoking or tolling the statute of limitations. 3 Larson, *supra*, § 78.31(d) (1976).

Appellants also point out that Mrs. Pulliam was treated by Dr. Barry Green, an orthopedic surgeon at Texarkana, in August of 1975. The evidence, however, firmly establishes that such treatment was not for the injury to the claimant's knee. There is substantial evidence in this record, which the Commission believed, to show that Mrs. Pulliam did not see a doctor about her 1975 knee injury, or appreciate the seriousness of her injury, until she went to Dr. Green on September 1, 1977.

Affirmed.